**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MARY LOUISE VAN HORN,

       Plaintiff,

vs.                Case No.  3:10-cv-946-J-JRK

MICHAEL ASTRUE,
Commissioner of Social Security,

       Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Mary Louise Van Horn ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits. Her alleged inability to work is based on lower back and hip pain. Transcript of Administrative Proceedings (Doc. No. 11; "Tr."), at 144.  On June 26, 2007, Plaintiff filed an application for disability insurance benefits, alleging an onset date of August 2, 2004. Tr. at 9.  Plaintiff's claim was denied initially, Tr. at 71-73, and was denied upon reconsideration, Tr. at 76-77.

On September 15, 2009, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert testified.  Tr. at 33-62.  On September 25, 2009, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision.  Tr. at 9-18. Plaintiff submitted additional evidence, see Tr. at 768-72, along with a request for review to

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 6), filed January 26, 2011; Order of Reference (Doc. No. 7), entered January 27, 2011.

the Appeals Council ("AC"), which the AC incorporated into the record, Tr. at 4. However, on August 20, 2010, the AC denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On October 13, 2010, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

Plaintiff raises one issue: whether the ALJ erred by not giving appropriate weight to the opinion of her treating physician. Memorandum in Support of Complaint (Doc. No. 13; "Pl.'s Mem."), filed May 9, 2011, at 6, 8 (capitalization and emphasis omitted). In support of her argument, Plaintiff relies on evidence that was not submitted to the ALJ but was submitted for the first time to the AC. Id. at 6-7. Upon review of the record and the parties' memoranda, the Commissioner's final decision is due to be reversed and remanded for the reasons explained herein.

## II. The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. Tr. at 11-18. At step one, the ALJ observed that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of August 2, 2004 through her date last insured of December 31, 2007." Tr. at 11 (emphasis and citation omitted). At step two, the ALJ found Plaintiff suffered from "the following severe impairments: degenerative disc disease (disorders of the spine); diabetes mellitus; and obesity." Tr. at 11 (emphasis and citation omitted). At step three, the ALJ ascertained that through the date last insured, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 12 (emphasis and citation omitted).

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except Plaintiff "needs a sit stand option," "must avoid ladders or unprotected heights," and should avoid the operation of heavy machinery, overhead reaching, extreme heat and cold, and unusual stress. Tr. at 13. The ALJ determined that Plaintiff "must avoid crouching and bending but can occasionally bend, stoop, squat, or crawl."[3] Tr. at 13 (emphasis omitted). At step four, the ALJ found Plaintiff was able to perform her past relevant work as a cashier because such work did not "require

---

[3] The ALJ's finding that Plaintiff must avoid bending does not align with his finding that Plaintiff can occasionally bend.

the performance of work-related activities precluded by [Plaintiff's RFC]." Tr. at 16 (emphasis and citation omitted). In addition, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined at step five that "there were other jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," including "ticketer" or "parking lot attendant." Tr. at 17. The ALJ concluded Plaintiff was not under a disability at any time from August 2, 2004 through December 31, 2007, the date last insured. Tr. at 18.

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision

reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff argues the ALJ erred by not giving proper weight to the opinion of her treating physician, John E. Carey, M.D. ("Dr. Carey"), a pain management specialist with the Jacksonville Spine Center. Pl.'s Mem. at 6. Specifically, Plaintiff disputes the ALJ's handling of one portion of an evaluation of Plaintiff's condition, entitled "Physical Capacities Evaluation" ("PCE"), Tr. at 764-67. The evaluation was performed by Dr. Carey's physician's assistant, Keith Rawlinson, PA-C ("Rawlinson"), and Rawlinson completed and signed the PCE. Pl's. Mem. at 7-8; see also Tr. at 764-67. The PCE presented to the ALJ only bore the signature of Rawlinson. Tr. at 764-67. After the ALJ issued his unfavorable Decision, Plaintiff's representative forwarded Rawlinson's PCE to Dr. Carey and requested that Dr. Carey affix his signature to the PCE if Dr. Carey agreed with Rawlinson's findings. Tr. at 768-72. Dr. Carey did so on October 27, 2009, Tr. at 772, and the PCE with Dr. Carey's signature was submitted to the AC, Tr. at 768-72. In Plaintiff's Memorandum, Plaintiff argues that because Dr. Carey agreed with Rawlinson's opinion on the PCE, the ALJ should have treated the PCE as a treating physician's opinion and given it "great weight." Pl.'s Mem. at 7-8. The premise of Plaintiff's entire argument rests on the above-described evidence that was not presented to the ALJ but was presented for the first time to the AC.[4]

---

[4] If a plaintiff alleges only that an ALJ's decision was not supported by substantial evidence, a reviewing court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's
(continued...)

-5-

The Commissioner counters that the opinion on the PCE presented to the ALJ was not from a "treating source," and therefore it was not entitled to the substantial weight afforded to medical opinions under 20 C.F.R. section 404.1513(a), (d)(1). Memorandum in Support of the Commissioner's Decision (Doc. No. 14; "Deft.'s Mem."), filed June 21, 2011, at 5. The Commissioner further contends that "[e]ven if this opinion is considered a medical opinion, the regulations permit the ALJ to accord it little weight, because it is inconsistent with the weight of evidence in the record." Deft.'s Mem. at 8.

The Court is unable to adequately address the parties' positions and resolve Plaintiff's claim because the ALJ's Decision is flawed in several respects, all of which impede judicial review. The flaws in the ALJ's Decision are generally categorized and discussed as follows: (1) treatment of Rawlinson's opinion in the PCE; and (2) failure to reconcile inconsistent records and failure to identify records relied upon.

**A. Treatment of Rawlinson's Opinion**

The ALJ's treatment of Rawlinson's PCE is the first area of concern. The ALJ stated as follows:

---

⁴(...continued)
decision is supported by substantial evidence." Falge, 150 F.3d at 1323 (emphasis added); see also Ingram, 496 F.3d at 1266 (recognizing "Falge to hold that when a claimant challenges the [ALJ]'s decision to deny benefits, but not the decision of the [AC] to deny review of the [ALJ], we need not consider evidence submitted to the [AC]"); Eads v. Sec. of Dep't of Health & Human Servs., 983 F.2d 815, 817 (7th Cir. 1983) (Posner, J.) (stating that an ALJ "cannot be faulted for having failed to weigh evidence never presented to him"). Thus, if a plaintiff's appeal centers only on an ALJ's decision to deny benefits and not on whether the AC erred in its denial of review, a reviewing court only considers the evidence "actually presented" to the ALJ. Falge, 150 F.3d at 1323-24. Here, because Plaintiff only challenges the ALJ's Decision, this Court is precluded from considering the additional evidence, namely Dr. Carey's adoption of Rawlinson's PCE, submitted for the first time to the AC. As detailed below, the Court cannot discern what standard the ALJ applied in weighing Rawlinson's opinion, so the procedural question regarding review of additional evidence submitted for the first time to the AC is of no consequence here.

> The undersigned notes that the [RFC] opined by a Physician's Assistant at Jacksonville Spine Center, which reveals a restricted range of light [work] which is consistent with the [RFC] delineated above; however, the undersigned does not accept the unsupported portion of this lay opinion which indicates that [Plaintiff] would be unable to perform work activities for four or more days per month and that she would not be capable of even sedentary exertional activities (Ex. 22F).[5] The undersigned finds that [Plaintiff's] allegations are far in excess of the medical evidence of record . . . .

Tr. at 15-16.

The ALJ first recognized that Rawlinson is a physician's assistant, but then the ALJ described Rawlinson's opinion as a "lay opinion." A physician's assistant is considered an "other source" as outlined in 20 C.F.R. sections 416.1513(d) and 416.913(d), and a physician's assistant's opinion constitutes "'evidence to be considered on the record as a whole.'" Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *1 (M.D. Fla. Apr. 17, 2008) (unpublished) (quoting Gramlisch v. Barnhart, 464 F. Supp. 2d 876, 881 (E.D. Mo. 2006)). The ALJ's choice of words coupled with his analysis of Rawlinson's opinion, which is more fully described below, creates confusion because it is unclear whether the ALJ actually considered Rawlinson as an acceptable medical source,[6] an other medical source, or a "lay" person who has no medical training at all.

The next paragraph of the ALJ's Decision further complicates the analysis relating to Rawlinson's opinion. The ALJ explained as follows:

---

[5] Exhibit 22F is Rawlinson's PCE. Tr. at 764-67.

[6] The Regulations list acceptable medical "[s]ources who can provide evidence to establish an impairment." 20 C.F.R. §§ 404.1513(a), 416.913(a). The acceptable medical sources are: (1) licensed physicians; (2) licensed or certified psychologists; (3) licensed optometrists; (4) licensed podiatrists; and (5) qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a).

> As for the opinion evidence, the records from Jacksonville Spine Center are being given substantial weight, with the exception of the opinion of Keith Rawlinson, P.A., to the extent that it is inconsistent with the [RFC] delineated above, because they reveal that [Plaintiff] retains significant ability to ambulate and her symptoms are not as severe as she alleges. Likewise, records from NAS Branch Clinic indicate that [Plaintiff] has objective findings upon her MRI's that are inconsistent with the alleged severity of her symptoms, although they do note extensive leisure and work activities that have not been reported elsewhere.

Tr. at 16. Although the ALJ again referred to Rawlinson as a "P.A.," it appears the ALJ then attempted to discount Rawlinson's opinion in the same manner an ALJ discounts a treating physician's opinion. If the ALJ actually treated Rawlinson's opinion as that of a physician's assistant, there would be no need to discount the opinion in the same manner as a treating physician's opinion because opinions of physician's assistants must only be considered on the record as a whole.

The ALJ's choice of words and his apparent discounting of Rawlinson's opinion cannot be reconciled. The Court cannot determine what standard the ALJ applied in weighing Rawlinson's opinion and therefore cannot review whether the ALJ properly considered the opinion.

In an apparent attempt to further discount Rawlinson's opinion, the ALJ found that Plaintiff's symptoms are not as severe as she alleges and that Plaintiff's "assertions are far in excess of the medical evidence of record." Tr. at 16. The assessment of Plaintiff's credibility and her subjective complaints of pain is well within the ALJ's discretion, but here it appears that the ALJ intertwined the credibility assessment with the discounting of Rawlinson's opinion, adding to the confusion.

The discounting of Rawlinson's opinion is also clouded by an exchange between the ALJ and Plaintiff's representative at the hearing. Near the end of the hearing, the ALJ asked Plaintiff's representative if Plaintiff had any further questions. Tr. at 61. Plaintiff's representative referred the ALJ's attention to the PCE containing Rawlinson's opinion. Tr. at 61 (referring to Tr. at 764-67). The exchange was as follows:

> ATTY: Your Honor . . . my position really relies on not only [Plaintiff's] testimony but the, you know, the RFC that we got from the Spine Clinic.
> . . . .
>
> ALJ: Okay. Are you talking about exhibit 22F?
>
> ATTY: Yes, sir.
>
> ALJ: The one that's signed by the [PA-C]?
>
> ATTY: Yes.
>
> ALJ: Okay.
>
> ATTY: . . . I mean, I know the PA signed it. I can certainly get it authenticated by Dr. Keri [sic].
>
> ALJ: No, I just want to make sure we're talking about the same thing . . . .

Tr. at 61. One interpretation of this exchange is that the ALJ was aware that Dr. Carey could authenticate the PCE, but the ALJ did not believe such authentication was necessary because he intended to treat Rawlinson's opinion as if Dr. Carey had already adopted it. A second interpretation of the exchange is that the ALJ intended to treat the opinion as that of a physician's assistant, and the ALJ discouraged Plaintiff's representative from obtaining the doctor's authentication consistent with the ALJ's intent. The ALJ's analysis of Rawlinson's

opinion in his Decision does not help to clarify the exchange at the hearing; rather, it further complicates review.

It is impossible to determine what standard the ALJ applied in reviewing Rawlinson's opinion. The ALJ referred to Rawlinson as a physician's assistant, but then described his opinion as a lay opinion. After referring to his opinion as a lay opinion, it seems that the ALJ analyzed Rawlinson's opinion in the same manner an ALJ analyzes a treating physician's opinion albeit in a confusing manner. Without knowing how the ALJ actually considered Rawlinson's opinion, this Court cannot determine whether such consideration was appropriate.

**B. Failure to Reconcile Inconsistent Records/Failure to Identify Records Relied Upon**

In his Decision, the ALJ failed to reconcile certain inconsistencies between various records in the administrative transcript. These records relate to Plaintiff's leisure activities, daily activities, and travel; and Plaintiff's response to medication and treatment. The ALJ also failed to identify the specific records from the Jacksonville Spine Center on which he relied. Each category is addressed in turn.

### 1. Plaintiff's Leisure Activities, Daily Activities, and Travel

In attempting to analyze Rawlinson's opinion, the ALJ relied in part on his determination that Plaintiff's symptoms are not as severe as she alleges, Tr. at 16, which equates to a finding regarding Plaintiff's credibility. In support of that finding, the ALJ listed certain leisure activities in which Plaintiff allegedly engages. Tr. at 15-16. These activities include "[Plaintiff's] ability to RV, attend NASCAR and sports games, fly to Denver in the winter, and cut hair in 2004." Tr. at 16.

Some of the records referred to by the ALJ accurately reflect Plaintiff may have engaged in or enjoyed the above-listed activities. See Tr. at 165 (stating Plaintiff's social activities/hobbies are "camping"); Tr. at 455 (recognizing Plaintiff could cut hair in 2004); Tr. at 457 (noting Plaintiff's primary leisure activities are RV-ing, NASCAR, football, and baseball games, but not indicating whether Plaintiff <u>watches</u> such events on television or personally <u>attends</u> the events); Tr. at 628 (stating Plaintiff traveled to Denver, flying both ways). However a careful review of the same records, as well as other records in the administrative transcript, reveals that the ALJ either mischaracterized or failed to reconcile the inconsistencies between the records. See Tr. at 165 (stating Plaintiff's social activities/hobbies are "camping" but also noting that Plaintiff cannot stand in the shower or get herself out of the tub; she cannot do laundry, housecleaning, or go shopping on a daily basis; and she takes sleep medication plus pain medication so she can sleep); Tr. at 188 (indicating Plaintiff <u>watches</u> NASCAR, not that she attends the events); Tr. at 628[7] (noting that after Plaintiff returned from the trip to Denver, she "had a significant increase in her pain").

### 2. Plaintiff's Response to Treatment and Medications

The ALJ found that "the records of [Plaintiff's] treating practitioners[] indicate a good response to prescriptions and treatment." Tr. at 16. To the contrary, the record indicates Plaintiff's pain is never relieved despite her medication. See Tr. at 566 (indicating one of

---

[7] Duplicates of this record are found at Tr. at 672, 697.

Plaintiff's medications was not "helping any with muscle spasms"); Tr. at 606[8] (noting Plaintiff's "pain is never relieved" but it "is decreased by lying down and taking pain pills"); Tr. at 628 (recognizing Plaintiff takes "Lortab without significant decrease in her pain"); Tr. at 631 (recognizing Plaintiff "had seen a significant decrease in her pain" but physical therapy can increase her pain; further rating Plaintiff's total pain level at 5/10); Tr. at 634 (explaining that Plaintiff's neck and upper back pain stemming from a motor vehicle accident has improved with physical therapy, but that her pain "is aggravated by sitting, standing, and walking" and "the only thing in the past that really helped were the injections"); Tr. at 688 (noting Plaintiff is in constant pain despite various medications).

### 3. Records from the Jacksonville Spine Center

The ALJ described the records from the Jacksonville Spine Center as "opinion evidence" and afforded those <u>records</u> substantial weight. Tr. at 16. The ALJ did not cite to any specific records, even though the administrative transcript contains more than 120 pages of records from the Jacksonville Spine Center, which span approximately three years. Referring to records as opinion evidence, without specificity, is not appropriate or consistent with the Regulations. "Medical opinions" are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2). Without knowing what records the ALJ was referring to, this vague finding convolutes review.

---

[8] A duplicate of this record is found at Tr. at 625.

## V. Conclusion

The lack of clarity in the ALJ's Decision regarding how he actually considered Rawlinson's opinion frustrates judicial review. Moreover, the ALJ's failure to reconcile the inconsistencies in the records related to Plaintiff's leisure activities, daily activities, and her travel; and the effect of Plaintiff's treatment and medications on controlling her pain, as well as his failure to identify which records from the Jacksonville Spine Center he relied on, further frustrates review. The confusion stemming from the ALJ's Decision renders the Court unable to resolve Plaintiff's claim. After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

    (a) Reconsider Rawlinson's opinion consistent with this Opinion and Order.

    (b) Consider the record as a whole and specifically refer to portions of the Jacksonville Spine Center records that are relied upon as "opinion evidence."

    (c) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

      3.     If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b).  See Bergen v. Comm'r of Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

      **DONE AND ORDERED** at Jacksonville, Florida on March 29, 2012.

*/s/ James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

emm
Copies to:
Counsel of record

-14-